## No. 13,323.

## SUCCESSION OF MRS. PAULINE LANGLES AND MISS ANGELE LANGLES.

### SYLLABUS.

1. A mother and daughter, sole presumptive legal heirs of each other, by separate wills, bequeathed each to the other her whole estate, and having so willed. each contingently made another disposition of the same. The declared contingency in each case was the death of the instituted heir *prior* to that of the particular testatrix. Mother and daughter perished in a shipwreck, under conditions such as to render it impossible by evidence to ascertain which of the two survived. Under such circumstances the presumptions of survivorship fixed by the Articles of the Civil Code apply. The mother being fifty-two years of age and the daughter thirty-five, the latter must be held to have been the survivor. There is no presumption of simultaneousness of death in Louisiana.

Succession of Langles.

2.  Courts construe and do not make wills, and if an event has happened for
    which a testator has not provided from not having foreseen it, although if
    he had foreseen it, there is a strong probability he would have provided for
    it in a particular way, his supposed wishes shall not prevail. *Quod voluit,
    non dixit.* Courts have to give effect to the expressed not the conjectural,
    or probable intention of the testators.
3.  The provision in a will that the executor should expend a certain amount for
    a tomb for the testatrix does not lapse because the body of the deceased
    could not be recovered and deposited in it—the word "tomb" has a suffi-
    ciently broad signification to be held to be a monument in memory of the
    dead—as such, it should be erected.

### ON APPLICATION FOR REHEARING.

Where two persons are, by law, entitled to inherit from one another, the fact
that they make wills in favor of each other does not deprive either of them
of the benefit of the presumption as to survivorship, established by Articles
936 *et seq.* of the Civil Code.

APPEAL from the Civil District Court, Parish of Orleans—
Rightor, J.

---

*Harry H. Hall,* Testamentary Executor, Appellant (*H. Gibbes
Morgan,* of Counsel) *pro se.*

---

*Lazerus & Luce (Herman Michel, Saunders & Gurley* and *Lionel
Adams,* of Counsel) for Mrs. Emile Kuntz, Opponent, Appellant.

---

*Buck Walshe & Buck* for Mrs. A. Cardona, Opponent, Appellant.

---

*John L. Peytavin* for Mrs. Marie Langles, Wife of Louis Montane
Copdebosq, Opponent, Appellee.

---

*Samuel L. Gilmore,* City Attorney, *James J. McLoughlin,* Assistant
City Attorney, and *H. Garland Dupre,* Assistant City Attorney, for
City of New Orleans, Opponent, Apellant.

---

*Charles J. Theard* for Josephine G. Costa, Mr. and Mrs. Alexander
Costa and their minor children, Opponents, Appellants.

---

*Henry Denis* for J. J. Langles and C. P. Langles, Claimants, Appel-
lees.

---

*Gustave V. Soniat* for Athènèe Louisianais, legatee under the will,
Opponent, Appellee.

The opinion of the court was delivered by NICHOLLS, C. J.

On application for a rehearing by MONROE, J.

## STATEMENT OF THE CASE.

The opinion of the court was delivered by

NICHOLLS, C. J. On the 25th of June, 1898, Mrs. Pauline Langles, widow of John Langles, made the following olographic will:

"NEW ORLEANS, June 25th, 1898.

"By this my last olographic will and testament, entirely written, dated and signed by me, I give and bequeath to my daughter, Angele M. Langles, all the property of which I may die possessed.

"Hereby constituting her my universal legatee. In case of the death of my said daughter, prior to my death, I give to my brother A. R. Costa, five thousand dollars. I give to Pauline Costa, five thousand dollars. I give to Alexander Costa, Jr., four thousand dollars. To John J. Costa, I give four thousand dollars. I give to Alfro H. Costa, four thousand dollars. I give to Angele Costa, four thousand dollars. I give to Josephine Jeannette Costa, five thousand dollars. I give to Mrs. A. R. Costa, my brother's wife, five thousand dollars. I give to the Charity Hospital, five hundred dollars. I give to the Ambulance Fund, four hundred dollars. I give two thousand dollars to Audubon Park for embellishments. I give one thousand dollars to the Convent of the Good Sheperd, corner of Broad and Bienville. Two thousand dollars to be expended for my tomb. After all debts are paid the remainder of my fortune I give to build a Memorial Hospital for women and children. I appoint Mr. Harry H. Hall my executor, with seizin of my estate."

On the 27th of June, 1898, Miss Angele Langles, daughter of Mrs. Pauline Langles, who had been thus constituted by her mother her universal legatee, made herself an olographic will, as follows:

"NEW ORLEANS, LA., June 27th, 1898.

"By this my last olographic will and testament, entirely written, dated and signed by me, I give and bequeath to my mother, Mrs. J. Langles, all the property of which I may die possessed. Hereby constituting her my universal legatee. In case of the death of my said

mother, prior to my death, I give the usufruct of five thousand dollars
to Josephine Jeannette Costa, at her death that sum to be given to the
Sisters of the Good Sheperd. I give to Pauline Costa five thousand
dollars. I give to John Costa two thousand dollars. I give to Alex-
ander Costa, Jr., two thousand dollars. I give to Angele Costa two
thousand dollars. I give to Alfro Costa two thousand dollars. I give
to the Sisters of the Good Sheperd one thousand dollars. I give to the
Charity Hospital five hundred dollars. I give to the Ambulance Fund
five hundred dollars. I give five hundred dollars to embellish Audubon
Park. I give five hundred dollars to embellish City Park. I give five
hundred dollars to the Athenée Louisianais. I give to Julia Stringer
two hundred dollars. I give to Sophia Taylor fifty dollars. I give one
thousand dollars to the Little Sisters of the Poor. I give one thousand
dollars to the News Boys Home. After all my debts are paid the
remainder of my fortune I give for the support of the Memorial
Hospital built by my mother. Three thousand dollars to be appropri-
ated for my tomb. I appoint Mr. Harry H. Hall my executor, with
seizin of my estate."

Shortly after the execution of these wills Mrs. Langles and her
daughter sailed from New York on the Steamer "La Bourgogne" on a
voyage bound for France.

The steamer collided with another in mid ocean and mother and
daughter are accounted among those who were lost, no tidings to the
contrary having been received. No facts or circumstances of their
death are known, and, in the nature of things, it is not probable that it
will ever be known which of the two survived the other.

The successions of each was opened in the Civil District Court, but
both successions were consolidated under the Number 57,020 in
Division "D." Both wills were probated and Harry H. Hall qualified
as executor under each.

The deceased left an estate within the jurisdiction of the court
valued at $167,889.

On the 3rd of August, 1898, Mrs. Clara Costa, wife of Anthony
Cardona, instituted a suit in which she alleged that she, together with
Adolphe M. Costa, and Alexander R. Costa, of New Orleans, and
Justin Langles, Charles Langles, and Marie Langles, all residing in
France, the last named a married woman, but whose husband's name
was unknown to petitioner, were the sole and only heirs of the late Miss

Angele Langles. That petitioner and Adolphe M. Costa, and Alexander R. Costa, were the sisters ·and brothers of Mrs. Pauline Langles, the mother of said Angele Langles, and widow of John Langles, and the other three parties were the sister and brothers of the said John Langles, the deceased father of Angele Langles.

That the latter was the sole issue of the marriage between her father and mother, and the only surviving heir at law. That she died unmarried and without leaving issue of her body, and petitioner and the other five named persons were all collateral relations of the same and nearest degree being aunts and uncles on both the paternal and maternal lines, and were, therefore, her sole and only heirs at law, and, as such, jointly in equal proportions of the one undivided sixth, each entitled to the ownership and possession of her estate.

That the succession of Angele Langles consisted of the property, movable and immovable, inventoried in her own name, and of that inventoried in the name of her predeceased mother, Mrs. J. Langles, to which she (Angele Langles) succeeded both by operation of law and (or) under the last will and testament of her mother, the said Mrs. Pauline Langles, duly probated at the instance of the testamentary executor.

That Mrs. Langles and Miss Langles, her daughter, were passengers on the steamship "LaBourgogne," bound on a voyage to France from New York City, which sank in mid ocean, on the 4th day of July, 1898, in a collision with another steamship and are accounted among those who are lost, no information or tidings to the contrary having been received or heard of.

That there were no facts nor circumstances known and, in the nature of things, it seemed not possible that any should ever be, or become known, to determine the matter of fact which of the two survived, and there was no other way to determine except by application of the presumption of law established in the Civil Code of Louisiana. That at the time of the accident said parties were aged, respectively, about fifty-two and thirty-five years, and, therefore, under the provisions of Article 939 C. C., Miss Angele Langles is presumed to have survived her mother and succeeded to her estate as sole heir and testamentary heir.

That Angele Langles made a last will and testament in the olographic form executed at New Orleans on the 27th of June, 1898; that had also been probated and ordered to be executed.

That under and by the terms of said will Angele Langles purported

to dispose of her entire estate, first, in favor of her mother, Mrs. P. Langles, in case of the latter's survival, and in the alternative event of her mother's death, prior to her own, after giving certain specific sums of money to certain purposes and bodies named or designated, and reserving the sum of three thousand dollars to be appropriated for her tomb, the said will provided and ordained as follows:

"After, all debts paid, the remainder of my fortune I give for the support of the Memorial Hospital to be built by my mother," thereby attempting to make and institute said Memorial Hospital as universal and residuary legatee of her entire succession and estate after the payment of debts, the special legacies and the reservation of said sum of three thousand dollars for her tomb.

That said bequest and provision of said last will was absolutely null and void, inoperative and ineffectual, for the reasons that no such person or being, physical or legal, material, corporate or fictitious, capable of receiving and acquiring said bequest or disposition in law, designated in the will as the "Memorial Hospital,". built by the mother, is now, or was at the time of the .death of the testatrix, or at the time of the making of said will, existing or in *esse,* with the legal capacity to receive, hold or acquire property under and in any of the forms and manners provided by law, or in fact in existence at all.

That therefore said disposition must be declared null and inoperative in law, and as to that portion of the deceased's estate intended to be disposed of must be decreed to have fallen and belonged to her legal heirs, as set forth.

That among the special and particular legacies the following are null and void and inoperative:

First—In the provision "I give the usufruct of five thousand dollars to Josephine Jeannette Costa, at her death that sum to be given to the Sisters of the Good Shepherd," the said intended bequest of five thousand dollars to said Sisters of Good Shepherd is null and void for the reasons:

1. That there is no disposition of said sum in favor of any one operative and vesting title thereto at the death of the testator.

2. And if (or whether) said provision is susceptible of the construction that the said sum of money shall be paid to Josephine Jeannette Costa, and at her death transmitted through her to said "Sisters of Good shepherd," or whether it may be construed to mean that the executor of the will shall pay to said Josephine Jeannette Costa, during

her lifetime, the usufruct of a sum of five thousand dollars, set apart for that purpose, and at her death deliver the sum itself to said "Sisters of Good Shepherd" the said bequest must be held null and void and illegal, as constituting a prohibited substitution and *fidei commissum*, contrary to the policy of the law of this State.

3. In any event the designation of person or persons intended to receive the legacy is too vague to determine judicially who or what natural persons or corporate body (if any) can be or is vested thereof and intended to receive the same, and for the same reason, above set forth, the bequest of one thousand dollars to the "Sisters of the Good Shepherd" and "five hundred dollars to Ambulance Fund" should be declared null and void and inoperative.

And the bequest, "I give five hundred dollars to embellish Audubon Park" and "five hundred dollars to embellish the City Park," for the same reason and for the further reason that it is not provided to whom the money shall be given,nor how or by whom same shall be expended for the purpose named, and neither said "Audubon Park" nor said "City Park" are persons or bodies in law capable of receiving bequests in the manner provided by the testator, nor had either any such representative in law as might legally accept or receive said legacy in its behalf.

The prayer of the petition was that the executor of both successions be cited and that contradictorily with him it be adjudged and decreed:

First—That Angele Langles survived her mother, Mrs. Pauline Langles, widow of John Langles, and that Angele Langles, as sole heir and universal testamentary legatee and heir succeeded to and became vested of full title of property, movable and immovable, left by her said mother and same constituted a part of the estate of Angele Langles.

Second—That petitioner, maternal aunt of Angele Langles, one of six only collateral heirs in the nearest degree, as set forth, be recognized as one of the six sole heirs at law of the deceased, and entitled to be declared owner of one undivided sixth (1-6) of her estate, subject to valid testamentary dispositions.

Third—That the provisions of the last will of the deceased, executed on June 27th, 1898, especially the intended legacy and bequest to the "Memorial Hospital," "built by my mother," the bequests to the "Sisters of Good Shepherd," to the "Ambulance Fund," to the "embellishment of Audubon Park" and "City Park" be severally, and for the grounds set forth, declared null and void and inoperative, and that it

be decreed that as to the amounts and all the property intended to be passed and bequeathed as above, that the said Angele Langles died intestate and that all her said entire estate, subject only to the debts, charges and valid legacies, should belong to and be distributed among her legal heirs, according to law, and she prayed for such other aid, remedy and relief as the nature of the case might require, and law and equity permit, and general relief.

On the 3rd of November, 1898, Harry H. Hall, testamentary executor, filed a petition in the successions, No. 57,020 and 57,023 (consolidated), in which he alleged that with the exception of a few insignificant current accounts, aggregating less than two hundred dollars, there were no debts due by the two successions the administration of which could be closed immediately but for a contest which had arisen among the heirs and legatees over the testamentary dispositions of the deceased.

That in order to avoid a multiplicity of suits and to bring the questions thus raised to a speedy issue and prompt determination, and to obtain for his guidance the interpretation of the court of the wills probated therein, he filed a tableau of his proposed distribution of this estate and accounts.

He prayed that the said tableau of distribution be duly published and that Alexander R. Costa, Adolphe M. Costa, Mrs. Clara Costa, wife of A. C. Cardona, Mrs. Herwig, wife of Emile Kuntz, and their husbands, Justin Langles, Charles Langles, Miss Langles (the consul of France at New Orleans as representing under treaty stipulations the absent French heirs) be cited.

That after due proceedings said tableau of distribution and accounts be homologated and the executor ordered to make distribution of the money, property and effects of these successions in accordance therewith.

The following was the account and tableau filed by the executor:

*Proposed Tableau of Distribution and Account.*
*Assets.*

The inventory of these estates shows money, property and

effects appraised at ...............................$167,889 14

There is some furniture belonging to these successions in a leased apartment No. — Rue Sheffer, Paris, France, the charge and liquidation of which has been entrusted to Messrs. Coudert Bros., at New York and Paris.

## *Indebtedness.*

Ordinary Debts—

| | | |
|---|---|---|
| L. Monrose (insurance premium)........................ | $100 | 00 |
| New Orleans Roofing and Metal Works.................. | 17 | 00 |
| P. M. Milner, cancelling mortgage and costs paid......... | 26 | 10 |
| H. H. Hall, services in suits of E. P. Vauthier........... | 20 | 00 |
| Costs paid therein .................................... | 17 | 35 |

Privileged Debts—

| | | |
|---|---|---|
| Executor's commission ............................... | $4,197 | 22 |
| Attorney's fees in succession, H. G. Morgan.............. | 5,000 | 00 |
| P. M. Milner, notary inventory ........................ | 500 | 00 |
| For *proces verbal* .................................... | 25 | 00 |
| Appraisers, $250 each ............................... | 500 | 00 |
| Costs paid ........................................... | 30 | 95 |
| Costs reserved ....................................... | 100 | 00 |
| | $10,533 | 63 |

## *Legacies.*

It seems to the executor to have been the plain intention of each of the decedents to give to the other, in case of her survival, her entire fortune, viz: one-half, net, of this consolidated succession; and in case that the other did not survive to enjoy the bequest, then and in that case to give the particular legacies specified in each will and the residuum to build and support a Memorial Hospital in this city for women and children. Both decedents having so perished that neither could enjoy the bequest of the other, the executor, assuming that the codal presumption of survivorship does not apply to testamentary dispositions and that both wills are effective, proposes from one-half of the net estate, deduction being first made of the debts, to pay under the terms of Mrs. Langles' will to:

| | | |
|---|---|---|
| A. R. Costa ...........................................| $5,000 | 00 |
| Pauline Costa ........................................ | 5,000 | 00 |
| Alexander Costa, Jr .................................. | 4,000 | 00 |
| John J. Costa ........................................ | 4,000 | 00 |
| Alfro H. Costa ....................................... | 4,000 | 00 |
| Angelo Costa ......................................... | 4,000 | 00 |
| Josephine Jeannette Costa ............................ | 5,000 | 00 |
| Mrs. A. R. Costa ..................................... | 500 | 00 |
| Charity Hospital ..................................... | 500 | 00 |

Ambulance Fund ..................................... 500 00
Audubon Park ...................................... 2,000 00
Convent of Good Shepherd (corner Broad and Bienville sts.). 2,000 00
To build a tomb or monument for decedent............... 2,000 00

$38,500 00

And after payment of these legacies, to pay to the Board of Adminis-
trators of the Charity Hospital of New Orleans the entire residue and
remainder of the said share and fortune of Mrs. Langles, to be by said
board employed, under the terms of said will, in building a "Langles
Memorial Hospital for Women and Children," preferably in connec-
tion with the Charity Hospital in this city, upon plans and designs
to be approved by said executor.

And from one-half of the net estate, deduction being first made of the
debts, as above, the executor proposes to pay, under the terms of Miss
Langles' will, to:

Josephine Jeannette Costa, during her lifetime, the usu-
  fruct of .........................................$5,000 00
    At her death the principal to be paid to the Sisters of the
      Good Shepherd.
Pauline Costa .......................................... 5,000 00
John Costa ........................................... 2,000 00
Alex Costa, Jr. ...................................... 2,000 00
Angelo Costa ......................................... 2,000 00
Alfro Costa .......................................... 2,000 00
Sisters of Good Shepherd ............................. 1,000 00
Charity Hospital of New Orleans....................... 500 00
Ambulance Fund ...................................... 500 00
Audubon Park ........................................ 500 00
City Park ............................................ 500 00
Athenee Louisinais .................................. 500 00
Julia Stringer ....................................... 200 00
Sophia Taylor ....................................... 50 00
Little Sisters of the Poor ........................... 1,000 00
Newsboys' Home ...................................... 1,000 00
To build a tomb or monument for decedent ............. 3,000 00

$26,750 00

And, after the payment of these legacies, to pay to the Board of Administrators of the Charity Hospital of New Orleans the entire residue and remainder of the said share and fortune of said Miss Langles, to be by said board employed, under the terms of said will, for the support of the aforesaid "Langles Memorial Home for Women and Children."

A number of oppositions were made to this tableau and proposed distribution. Justin J. Langles and Charles P. Langles opposed, alleging themselves to be brothers of John Langles, and thereby the nearest legal heirs of Miss Angele Langles, whose succession they declared they accepted purely and simply.

They opposed for the following assigned reasons:

That Angele Langles survived her mother, Mrs. Pauline Costa, widow of John Langles, in the wreck of the French steamer La Bourgogne, on the — day of July, 1898, in which they both perished.

That the survivorship of the said Angele Langles in the premises was established by the provisions of the Civil Code of Louisiana, in default of circumstances of the fact, which did not exist in this case, the said Angele Langles being at the time above the age of fifteen years.

That she was the sole legal and forced heir of her mother, whose sole succession therefore devolved upon her.

That the legacies made by her said mother in her last will had all lapsed because they were made expressly by the testatrix to be dependent and conditioned on the prior death of the said Angele Langles.

That in case the presumption of survivorship as established by the law of Louisiana applied also to legatees as well as to legal heirs, then petitioners claimed the benefits of such presumption and accepted the universal legacy made by the said Pauline Costa, widow of John Langles, in favor of her said daughter, Angele Langles, and in that case also petitioners averred that all the other legacies made by the said Pauline Costa in her last will had lapsed for the same reason of the survivorship of the said Angele Langles.

Petitioners therefore opposed the recognition of any and all the legacies contained in the last will of the said Pauline Costa, widow of John Langles, except the one in favor of her daughter, Angele Langles.

First—Petitioners opposed the recognition of the legacies and dispositions in the last will of the said Angele Langles for the following reasons and on the following grounds, to-wit:

1. The legacy of $5000.00 to the Sisters of the Good Shepherd, because there was no legal bequest of that sum to the said supposed legatee, the testatrix having only disposed of the usufruct of the same.

2. The disposition of the sum of $3000.00 to build a tomb or monument for decedent, because the intention of the said testatrix was clearly that she should be buried in such a tomb, which could not be done, as her body had not been recovered from the sea.

3. The legacy of the remainder of the fortune of the testatrix for the support of the Memorial Hospital built by her mother, because, first, such disposition was too vague and indefinite, and there was no legatee of the same capable of accepting or receiving the bequest, or complying with the desire of the testatrix; and, secondly, because as the legacy was expressly for the purpose of supporting the Memorial Hospital built by the mother of the testatrix; and inasmuch as there was, or will be, no such Memorial Hospital built by the mother of the testatrix, this legacy, even if it were legal and valid, had lapsed and was of no effect.

Petitioners opposed generally the recognition of all the legacies contained in either of the last wills of said Pauline Costa and said Angele Langles, because both wills had lapsed for want of evidence to show that either testatrix died first; Petitioners still reserving their rights to the universal legacy made by the mother to the daughter, if they were entitled to it under the law.

Petitioners opposed the following items of the executor's account as excessive and illegal, to-wit:

The attorney's fees ..................................$5,000 00
The notary's charge ..................................  500 00
The appraisers' charge ...............................  500 00

Their prayer was that they be recognized and decreed to be the nearest legal heirs of the late Angele Langles; that it be furthermore decreed that the said Angele Langles survived her mother, the late Pauline Costa, widow of John Langles; that the said Angele Langles was the sole legal and forced heir of her mother; that the whole of the succession of the said Pauline Costa, widow of John Langles, devolved upon her daughter, the said Angele Langles; that all the legacies made by the said Pauline Costa, except the one made to her said daughter, are null and of no effect; that all the legacies made by the said Angele Langles are null and void and of no effect.

That the items of the executor's account opposed as aforesaid, be

reduced according to law; and that the proposed tableau of distribution and account of the said executor be ordered to be amended according to the opposition of petitioners, and petitioners prayed for general relief in the premises.

The City of New Orleans opposed:

That portion of the executor's account which proposes to pay over to the Charity Hospital of the city the residuum of the estate, to be expended by said hospital for a Hospital for Women and Children, claiming—

That the City of New Orleans was the only corporation capable of receiving said residuum and opponent claimed the right to receive said residuum and to apply same to the purposes mentioned in the last will and testament of the testators herein.

Opponent was ready to accept such trust.

Opponent prayed that this opposition be maintained and that the account filed by said Harry H. Hall, testamentary executor, be amended so as to recognize your opponent as the residuary legatee of the decedents herein, and that the *residuum* of this estate be paid over to the City of New Orleans for the purpose of establishing and maintaining a hospital for women and children in accordance with the wishes and wills of the testators.

Mrs. Marie Langles, wife of Louis M. Capdeboscq, opposed, alleging that she was the sister of John Langles and, as such, a legal heir for her virile share of Miss Angele Langles, daughter of said John Langles, and, as such, entitled to the residuum of said late Miss Angele Langles, after payment of all legal debts and of all legacies not hereinafter specially opposed.

That petitioner and opponent opposed the final account and tableau of distribution filed by Harry H. Hall, testamentary executor, in each and every item thereof, in so far as they related to the will of Mrs. Widow John Langles, and all the legacies made thereunder, to-wit:

| | |
|---|---|
| A. R. Costa | $5,000 00 |
| Pauline Costa | 5,000 00 |
| Alex Costa, Jr. | 4,000 00 |
| John J. Costa | 4,000 00 |
| Alfro H. Costa | 4,000 00 |
| Angelo Costa | 4,000 00 |
| Josephine Jeannette Costa | 5,000 00 |

Mrs. A. R. Costa ....................................... 500 00
Charity Hospital ...................................... 500 00
Ambulance Fund ...................................... 2,000 00
Convent of Good Shepherd ............................ 1,000 00
For a tomb (expenses)................................. 2,000 00

Remainder of estate to build a Memorial Hospital for Women and Children; and for grounds of opposition, petitioner and opponent averred and said that all of the said legacies had lapsed, together with the will of the said Widow John Langles, by the fact of her death prior to that of her daughter, Miss Angele Langles, in the wreck of the French steamer La Bourgogne, on July 4th, 1898, in which they both perished, the said daughter being over fifteen years of age, having survived the mother under the presumption of law.

And as a further ground petitioner and opponent averred and said that all of said legacies had lapsed because they were made expressly by the testatrix to be dependent and conditioned on the prior death of Miss Angele Langles.

And petitioner and opponent averred that said will and testament of said Widow John Langles was null and void and that all of its provisions and legacies had lapsed except the universal testamentary disposition and legacy contained in said will in favor of her daughter, Miss Angele Langles, who survived her as aforesaid.

Petitioner and opponent further opposed said final account and tableau of distribution herein filed by Harry H. Hall, testamentary executor, in so far as they related to the will of Miss Angele Langles, and the following legacies made thereunder, to-wit:

1. Josephine Jeannette Costa, during her lifetime, the usufruct of (and at her death the principal to be paid to the Sisters of the Good Shepherd) ...................$5,000 00
2. Ambulance Fund ................................... 500 00
3. To embellish Audubon Park ......................... 500 00
4. To embellish City Park ............................ 500 00
5. Appropriation to a tomb ........................... 2,000 00

Remainder of estate for support of Memorial Hospital built by Mrs. Widow John Langles.

And for grounds of opposition petitioner and opponent averred and said:

1. That the legacy to Josephine Jeanette Costa, during lifetime, of the usufruct of five thousand dollars and at her death of the capital to the Sisters of the Good Shepherd, constituted a *fidei commissa*, a prohibited substitution which was illegal under the laws of the State; that under the form of a usufructuary disposition, testatrix created a charge of preserving and returning the capital of a sum of money consumable by use.

That the legacy of five hundred dollars to the Ambulance Fund was null and void because there was no such corporation known, and no one designated to receive same.

That the legacy to embellish each of Audubon Park and City Park, respectively, five hundred dollars, was null and void because there was no legatee named to receive the same and to apply the amount to that purpose.

That the appropriation of three thousand dollars to a tomb was null and void because the intention of legatee to be buried therein could not be carried out because she died at sea and her body could not be recovered, nor that of her mother.

That the legacy of the remainder of the estate for the support of a Memorial Hospital built by the mother was null and void and illegal because it was too vague and indefinite, because there was no legatee to receive and accept the same, and to comply with the wishes of the testatrix, and finally because the Memorial Hospital not having been built by the mother of the testatrix the legacy of a sum of money to support it had lapsed and was of no effect.

She prayed that these oppositions be filed, and, after due hearing, there be judgment in favor of petitioner and opponent against the testamentary executor of these consolidated successions, maintaining all these oppositions and ordering the said final account and tableau of distribution to be amended accordingly, annulling all dispositions made by the will of Mrs. Widow John Langles, except that in favor of her daughter, Angele Langles, as her universal legatee, and further annulling the following legacies made by Miss Angele Langles in the last will and testament, to-wit:

1. Legacy to Josephine Jeannette Costa, during life, of the
    usufruct of ....................................$5,000 00
    And at her death of the principal thereof to the Sisters
      of the Good Shepherd.
2. The legacy to the Ambulance Fund....................  500 00

3 and 4. The legacies to embellish Audubon and City Parks,

    each ............................................ 500 00

5. The appropriation for a tomb ........................ 3,000 00

6. The legacy of the remainder of the estate for the support of the Memorial Hospital built by Mrs. Widow John Langles, and further decreeing that after payment of all debts and legacies of Miss Angele Langles not specially opposed, petitioner and opponent be recognized as entitled to the *residuum* of the estate as an unwilled asset for her virile share jointly with the other heirs at law who may be entitled to their share of the residuum, and further prayed for all general and equitable relief.

Mrs. Clara Costa, wife of Anthony Cardona, opposed the account, reiterating and making part of the same the allegations contained in the petitions already filed by her.

She prayed as in said petition set forth that Angele Langles by effect of the presumptions of law, established in Article 936 *et seq.*, Revised Civil Code, be decreed to have survived her mother, Pauline Costa, widow of J. J. Langles, and accordingly that the account of the testamentary executor filed be ordered to be amended to conform to the prayer of said petition, especially in this:

That said Angele Langles be decreed to be, whether under the will of her mother or by operation of law, under conditions hereinafter set forth, the sole and only heir of her said mother, and that the entire property inventoried be held to be and to belong to the estate of said Angele Langles, to be distributed in accordance with the prayer of opponent's petition, referred to as part of this opposition, and she specially reiterated each and every item of objection and opposition to the special legacies, as well as to the universal legacy, wherein said will purported to dispose of the residue of the estate, for the reasons in said original petition set forth, and she opposed as excessive and illegal the following items in said executor's account, to-wit:

The attorney's fee ......................................$5,000 00

The notary's charge .................................... 500 00

The appraiser's charge ................................. 500 00

Reserving all the rights contended for by opponent, accruing to her, based upon the presumption as to the survivorship of Angele Langles,

and in no manner waiving the same, opponent averred that, if as as-
serted by the executor, said presumption did not apply and both dece-
dents perished under such circumstances that neither could enjoy the
bequests of the other, in that event both of said wills, that of Pau-
line Costa and that of Angele Langles, must be held null and void, and
all legacies to have lapsed, because they were made expressly by each
testatrix to be dependent and conditioned on the prior death of the first
named universal legatee and in so far as the disposition of proeprty
was concerned by the said deceased should be decreed to have died in-
testate.

· That if the court should hold, as contended by the executor in his
account, upon whatever reason, that said wills should stand and be
executed separately, then opponent specially opposed the same grounds
as set forth in opposition to the universal legacy in the will of Angele
Langles, the bequest of Pauline Langles, for the "building of a Memo-
rial Hospital," as vague, impossible of execution, and for reasons
as set forth in regard to similar items in the will of Angele Langles,
the bequests, "five hundred dollars Ambulance Fund," "two thousand
dollars Audubon Park," and "two thousand dollars Convent of Good
Shepherd," and she opposed the items, "two thousand" and "three
thousand dollars" in the wills respectively "to build tomb or monu-
ment for decedent" on the grounds that manifestly such tomb or mon-
ument was intended as or for the place of their "final" rest and burial,
and the intention could not, for obvious reasons, be carried out.

She finally averred as heir-at-law of both said Pauline Langles and
said Angele Langles, that she accepted their successions purely and
simply, and in the event said Angele Langles, by effect of the presump-
tions established by Article 936 *et seq.* of the Revised Civil Code, be
held to have survived her mother, she prayed and was entitled to be
recognized in her said capacity as legal heir of one undivided sixth part
of the estate of said Angele Langles.

And in any other event or alternative, as set forth, she asked to be
recognized as heir of said Angele Langles, to the extent of one-sixth
interest and one undivided fourth interest in and to the estate of Pau-
line Langles.

She prayed that this opposition be sustained, the account of the exec-
utor amended or rejected, and judgment rendered distributing the
estate of said Angele Langles or of Angele Langles and Pauline Lan-

gles under the conditions contended for and recognizing petitioner's rights therein as set forth.

And she prayed for such other and further aid, remedy and relief as the nature of the case might require and law and equity permit, as in duty bound, etc.

Mrs. Rosamond E. Herwig, wife of Emile Kuntz, alleging herself to be the sole surviving issue of her deceased mother (who was a sister to Mrs. Pauline Costa), and as such one of the heirs of Mrs. Pauline Costa, excepted to and opposed the account and tableau on the grounds that—

1. The executor could not engraft or inject in the matter of any account an issue as to the inoperativeness of the wills of the two decedents, the lapse or invalidity of legacies, or a contest or issue of fact as to who are the universal legatees or heirs at law of Miss Angele Langles or Mrs. Pauline Costa.

2. That the issues raised were largely questions which had reference to the inoperativeness of the wills of the two deceased parties, and the illegality or lapse of legacies under said wills; and that such issues are matters over which a court of ordinary jurisdiction had control, and were not probate matters, such as should be injected and tried in a matter of account, and that, if so injected or tried, they would operate to deprive exceptor and other parties in interest of the benefit of a trial by jury.

She prayed that all matters in the petition or account having reference to the failure of the wills of the two deceased, mother and daughter, to the lapse or illegality of the legacies under said wills, and to questions or issues as to the survivorship of either said mother or daughter, and who are the universal legatees or legal heirs of said deceased mother and daughter, be eliminated from this controversy.

Under benefit of the exceptions she averred that Mrs. Pauline Costa, widow of John Langles, departed this life on the 4th day of July, 1898, without issue, her daughter, Angele Langles, the only child of the marriage between said Pauline Costa and her husband, John Langles, having died prior to her said mother, Pauline Costa, that they were on the steamship "Bourgogne" at the time of the wreck of said steamship in the month of July, 1898; that owing to the infirmities of Marie Angele Langles, the daughter of said Pauline Costa, who was subject to attacks of epilepsy, and in consequence of said wreck, located as they were in the steamship at the time the Bourgogne was struck by the

"Cromartyshire," the effect of the shock upon said Marie Angele Lan-
gles, in her then physical condition, necessarily produced a state of
unconsciousness from which she never recovered before life was ex-
tinct; and that the mother, Pauline Costa, therefore survived her child
and died without issue.

That petitioner's mother was the sister of Pauline Costa, deceased;
that petitioner's mother departed this life in the city of New Orleans
on the — day of ———, 18—; that petitioner was sole issue of her
said mother and was therefore entitled to inherit from said Pauline
Costa by right of representation.

That said Pauline Costa left surviving here ——— Cardona, a
sister, and Alex Costa and John R. Costa, two brothers, all of whom
with petitioner were entitled to their distributive share of her es-
tate; that under the terms of the will of said Angele Langles, the spe-
cial legacies therein provided for were only to be discharged in the
event that she, said Angele Langles, survived her mother; that in con-
sequence of her prior death the legacies therein provided for had
lapsed, and her mother under the terms of her will became her universal
legatee; that the special and particular legacies provided for in the
will of Pauline Costa were to be discharged by the executor only in the
event that Pauline Costa survived her daughter, but that in the
event that Pauline Costa and her daughter, Angele Langles, perished
simultaneously, all the particular legacies in both wills had, in con-
sequence, therefore lapsed, and out of said estate none were to be paid
and discharged, save and except the fund providing for the erection of
monuments or tombs to the memory of decedents, which deponent in
no manner questioned or disputed from considerations of humanity
or propriety, and not of law.

Petitioner represented, in opposition to the account filed herein by
the executor, that the attempted disposition under the will of Pauline
Costa (made in the event that she survived her daughter) for the erec-
tion for a memorial home for women and children was void, inasmuch as
it neither designated the trustees contemplated by law in such cases,
nor was there at the time *in esse* a corporation capable of receiving said
legacy nor one provided for, and that said legacy was so vague, indefi-
nite and uncertain that it was impossible of execution, even if the same
were otherwise valid; and that the executor was without authority to
designate to whom the proceeds of said estate should go, and it was be-
yond his power to divest the legal heirs of their interest in the estate of

the decedents, transmitted to them by law, under the pretext of giving it to an institution not named in the will and not contemplated by the testatrix.

That the prior death of Angele Langles, under the terms and conditions of her will, transmitted by testament her estate to her mother, and if the death of both Pauline Costa and Angele Langles were simultaneous, then the said dispositions contained in said wills were inoperative; and the said wills and dispositions therein produced no effect whatever.

That in opposition to the homologation of the account filed by the executor ther were no presumptions established by law where the death results from conflagration, battle or wreck, but a simple announcement of rule for the guidance of the court, which yield at all times to the "circumstances of the fact," and the fact was; as petitioner was advised, believed and had recited, that owing to the infirmity of Angele Langles she perished first, and her estate, under the terms of her will, devolved upon her mother, Pauline Costa, who transmitted the same under the law to petitioner as the representative of her mother, and to the brothers and sisters of said Pauline Costa, to-wit: ——— Cardona and Alex and John R. Costa.

That the rules for the guidance of the court in consequence of deaths resulting in the manner described herein, apply only to intestate successions and not to successions transmitted by testament, and independently of the right which either would have enjoyed of inheriting from the other, under the law, the transmission of the succession in this case was testamentary and not *ab intestato*.

That in opposition to the distribution sought by the executor of the estate of the decedents, and if said decedents perished in the calamity and the circumstances of the fact did not justify the finding that Pauline Costa survived her daughter, petitioner alleged in the alternative that the deaths were simultaneous, and that in consequence thereof, the legacies contained in both wills were inoperative and ineffective, inasmuch as they were conditioned to be paid only upon the prior death of one or the other.

That opponent joined with the other opponents to the tableau of distribution proposed herein, in all other respects save and except the question of survivorship, the charges of the executor, those of the attorney representing the executor, and the notary's charges and appraiser's fees, which opponent believed to be fair and reasonable,

and should be allowed, and except as to the fund to be devoted by the executor for the erection of a monument to the memory of decedents, and joined in said opposition of Langles and Cardona in all other respects, not inconsistent with opposition of petitioner.

She prayed that it be decreed that Pauline Costa survived her daughter, Angele Langles, and in consequence of said survival, by virtue and force of the testament of Angele Langles, she, the said Pauline Costa, became the sole universal legatee and sole heir of her estate, and that the legacies provided for in the will of said Angele Langles be held inoperative, inasmuch as the transmission of her estate by testament to her mother precluded their payment, her mother surviving.

2. That in the event the court held that there was an absence of proof or "circumstance of the fact" showing the prior death of Angele Langles, that it be decreed that the deaths of Pauline Costa and Angele Langles were simultaneous, and that, in that event, the legacies under both wills be held inoperative and ineffective.

3. That it be decreed, at all events, that the disposition in favor of a memorial home for women and children was inoperative, null and void.

4. That the entire estate of Pauline Costa and Angele Langles be administered as the estate of Pauline Costa, she having inherited her daughter's separate property by virtue of the will; and that petitioner be recognized as entitled to her distributive share by right of representation in the estate of Pauline Costa, in common with her aunt, ———— Cardona, and her uncles, Alex and John R. Costa.

5. That the opposition to the account of the executor in all other respects be maintained.

Petitioner prayed that the issues be tried by a jury, and, after trial, that judgment be pronounced in accordance with the prayer hereof, and for costs of this opposition, and for general relief.

The district court rendered judgment ordering, adjudging and decreeing that Angele Marie Langles be recognized to have survived her mother, Pauline Costa, widow of John Langles, and to have inherited the whole estate of her said mother, both as her universal legatee and heir-at-law; that all the dispositions of the last will of the said Pauline Costa, widow of John Langles, except that by which she instituted her daughter her universal legatee, had lapsed and were of no effect; that the last will of the said Angele Marie Langles be recognized valid, except as to the legacy therein contained for the support of the Memo-

rial Hospital built by her mother, and as to the appropriation of three thousand dollars for her tomb, both of which dispositions of the said will were adjudged to be null and void and of no effect.

It was further ordered, adjudged and decreed that all the particular legacies of the will of said Angele Marie Langles be paid by the testamentary executor.

It was further ordered, adjudged and decreed that Mrs. Clara Costa, wife of Anthony Cardona, Adolpho M. Costa, Alexander R. Costa, Mrs. Marie Langles, wife of Louis Montane Capdeboscq, Justin J. Langles and Charles P. Langles be recognized as the sole legal heirs of the said Angele Marie Langles, each one for one-sixth of her estate, and that they be put in possession of all the property of her succession after payment of the aforesaid legacies and charges of administration.

It was further ordered, adjudged and decreed that the demand of the City of New Orleans be rejected with costs. }

It was further ordered, adjudged and decreed that the account and tableau of distribution of the testamentary executor, except so far as therein otherwise adjudged and decreed, be approved and homologated, and that the right of Mrs. Ella Berry, under her opposition (which had not been tried) be reserved.

Mrs. Rosamond Herwig, wife of Emile Kuntz; Harry H. Hall, executor; Mrs. C. Cardona, wife of Anthony Cardona; the City of New Orleans and Miss Josephine Jeannette Costa, Alexander Costa and his wife, acting for themselves and their minor children, appealed.

OPINION.

In July, 1898, Pauline Costa, widow of John Jangles, and her daughter, Angele Langles, were passengers on the steamship La Bourgogne, which was sunk in the Atlantic Ocean, at five o'clock in the morning, as the result of a collision with another steamer.

Some of the passengers were saved, but most of them were lost, Mrs. Langles and her daughter being among the latter.

They occupied a stateroom on the larboard side of the ship in the immediate vicinity of the point of collision.

Nothing is known of the circumstances of their death, and this want of knowledge has given rise to the present litigation, the litigants contending, some of them, that the deaths were simultaneous, others that the mother, and others that the daughter had died first.

The mother was fifty-two years of age; the daughter unmarried and between thirty and forty. Mother and daughter, in the absence of testamentary dispositions, would have been respectively called to inherit from each other, and, had the parties died intestate, we think it is conceded that the daughter should be held to have survived the mother, under the presumptions established by Article 936 *et seq.* of the Civil Code, providing for cases "where parties, entitled to inherit from one another (appellés a la succession l'une de l'autre), perish in the same event, such as a wreck, a battle or a conflagration, without any possibility of ascertaining who died first," and where there are no circumstances of fact shown to take the case outside of those presumptions.

The only evidence offered on the trial for the latter purpose was evidence to show that the daughter could swim while the mother could not.

That fact might have been relevant had it been shown that the parties were, at any time, placed in a position where swimming would have entered as a factor in reaching a conclusion, but the parties were never seen to leave their stateroom.

The contentions between the parties have arisen from the fact that mother and daughter each left a will, and from the terms in which these were couched.

It is claimed by some of the parties that the presumtions referred to are confined to intestate, and have no application whatever to testate successions, and they quote a number of French commentators in support of that proposition.

There is no doubt that the question of the presumption of survivorship of parties so situated would, in many instances, where they had died leaving wills, be an irrelevant and immaterial circumstance.

If, for instance, the parties had, by their wills, changed the legal course of inheritance by leaving their property, in absolute terms, to outsiders, where they were free to make such change, it would make no difference which of the parties should have died first, as the will of each would stand and determine the rights of parties. Neither party would have any interest in invoking presumptions.

The question is, however, whether the bare fact that the parties have left wills has the effect of itself in all cases, without reference to who the parties were, how they stood related to each other and what the terms of the wills might be, to withdraw the rights of parties from

being tested by the rules established for the presumptions of survivorship.

In the case at bar the deceased were mother and daughter.

Without a will by the mother, the daughter would have taken her whole estate as legal heir. Without a will by the daughter, the mother would have taken the whole estate as her legal heir.

Let us now suppose both mother and daughter to have made wills by which each bequeathed absolutely to the other the whole of her property, and to have said nothing more. Would the fact that the survivor, under such a will, had been provided for through a will of the deceased to the same extent that she would have been provided for by the law itself had there been no will, so radically change the status of the parties that the survivor would be no longer an heir, but a legatee, or if not a legatee that the heirship would be altered in any of its essential characteristics. Suppose, under this same assumed condition, the mother and daughter to have died under precisely the same circumstances that the mother and daughter died in the present instance, would the existence of these two wills have altered the situation at all from what it would have been had there been no will?

Upon what theory would the single fact that the will of the deceased had exactly coincided with the will of the law work this alteration in the status of affairs.

We see no substantial ground upon which this change would rest. We think the status of legal heir and testamentary heir would be substantially merged under the circumstances stated.

Had the wills of the parties in this case been such as we have just assumed and parties had raised a contest as to who was entitled to the inheritance, we would not have hesitated to apply the doctrine of survivorship and decide the fact of survivorship by the presumptions of the Code. The priority of the death of the parties would, necessarily, have to be determined.

Suppose that the mother and daughter, instead of each constituting in her will the other her heir to all her property, should have each made a few special legacies absolutely to third parties and said nothing more, and they should both have died as this mother and daughter died, would the existence of these wills, so couched, have altered the situation as to the course the residuum would otherwise have taken?

We think that the question of who should take the bulk of the estates would have to be tested by the question of survivorship, and the

fact of survivorship *would have* to be tested by the presumptions of the Code. In this case the special legacies of both parties would have to be paid, so far, at least, as the legitime was not concerned, but the order of the succession would not be interfered with. *Quoad* the portion of the estate not disposed of, the succession would be intestate succession (C. C. 1709) to be disposed of by the priority of the deaths. Let us now come to the precise case before us.

The mother bequeathed the whole of her estate to her daughter, absolutely. The daughter bequeathed the whole of her estate to her mother, absolutely.

The only fact which would make either of the wills fail would be the death of the heir prior to the death of the testator, a result flowing from the terms of the law itself.

An accident occurs from which both parties die under circumstances such as to make it impossible to say, from evidence, which of the two died first. That fact, as a matter of necessity, has to be decided. It stands in the very path of a decision.

The court has either to *assume* that both died simultaneously, or *presume* that one died before the other. We say *assume* that the parties died simultaneously for the reason that there is no presumption in this State of the simultaneousness of the death of two parties.

The court has to act either upon an assumption of simultaneous death or upon a presumption of survivorship; for the latter there is authority, for the former there is none.

Laurent gives as his reason for excluding from testate successions the presumptions of the Code that the articles on that subject are found in the title of successions, and are not reproduced under the Codal special title of "Donations and Testaments." That presumptions are created by law, can apply only to the precise cases provided for and can not be extended by analogy; that, therefore, it is unwarrantable to transfer presumptions provided for "legal or intestate successions" to "testamentary successions." He says there is but one kind of succession in France, and that is the intestate succession; that parties who take under "testaments" are not heirs, but legatees; that the parties take by force of *testamentary dispositions,* donations *mortis causa,* not by "succession."

Whether the dispositions made by will should be considered as standing on a different plane from those resulting from the law in case of death without a will, no matter who the parties were, nor what the

terms of the will might be, the fact would, none the less, remain where two wills should have been made, one by a mother and the other by a daughter, such as were made in this case, that each would be entitled, on proof of the death of the testators to probate without proof either of the prior death of the instituted heir or the simultaneous death of the parties, for two reasons, first, that it would not be the proper time, or place on such an occasion, to raise the question as to the time of the death of the instituted heir, relatively to that of the testator, and, next, because neither the prior death of the instituted heir, nor his simultaneous death, could be proved as a matter of fact, and the matter (if it could be disposed of at that time) would have to be disposed of either by "presumption" or by "assumption."

If the legal presumptions would not be admissible (as Laurent says), because not provided for for that precise case, we do not think judicial "assumptions" would be permissible.

As between excluding a legal presumption by construction and acting upon an assumption not authorized under any circumstances, there should be no difficulty in fixing the proper course. The same difficulties would be met by the parties in any later contest to set aside a probated will or have it declared inoperative.

Let us now turn to what are called the "substituted provisions" of the two wills. They were, undoubtedly, intended to replace the original provisions in their entirety for, after making special legacies, the residuum was attempted to be provided for, but what were the circumstances under which this replacement was to take place?

The language of the wills is explicit on that subject; the testators each declare that the substituted provisions were to replace the others in the one case, if the daughter should die prior to the mother; in the other if the mother should die prior to the daughter.

The parties have, themselves, in unambiguous language made not the "simultaneousness" of the deaths, the fact upon which the new provisions were to spring into existence, but the prior death of the instituted heir.

We do not see by what authority we could strike out the words "in case of the death of my daughter prior to my death," and "in case of the death of my mother prior to my death," and substitute therefor "if I die simultaneously with my mother," and "if I die simultaneously with my daughter."

The parties had the right to fix the fact which would give rise to the

substitution, and each testatrix has fixed the prior death of the instituted heir as that fact.

It is said that we can not, with any degree of reasonableness, believe or say that either of these ladies intended that the prior death by a second or a minute was referred to; that we must obviously see that the mother meant to say "if the situation should be such that my daughter can not personally take and enjoy the property I bequeath to her, then I make the following disposition of my property," and the daughter meant to say "if the situation should be such that my mother can not personally take and enjoy the property I bequeath to her, then I make the following disposition of my property."

We may concede that if the parties had foreseen what has since happened, that each would have made a will couched in the language suggested, and that their not having done so, and using the precise language they did, will cause their property to take a direction which neither intended, but the fact is that they did not foresee what happened afterwards, did not guard against its happening, but employed words which we can not ignore, but must enforce, let the legal results be what they may.

We can not frame new wills for parties; we have to take what the parties have said, not what they would have said had they been able to look into futurity. As said in Wing vs. Angrave (8 English Ruling cases, page 17): "A judge is to construe and not to make a will, and if an event has happened for which a testator has not provided from not having foreseen it, although if he had foreseen it there is a strong probability he would have provided for it in one particular way, his supposed wishes shall not prevail, *quod voluit non dixit*. We are to give effect to the expressed, not the conjectural or probable intentions of * * * testators."

The books are full of cases not only of wills, but of contracts, where the language employed has fixed rights and determined obligations and brought about consequences which were not only unforeseen, but in direct opposition to the expectation and intentions of the parties.

We had occasion, in State *ex rel.* Bulkley vs. Whited, etc., to refer to this matter.

Not only did the parties in this case not provide for the contingency of simultaneous deaths, but the law has not provided for such a contingency, but has expressly provided for survivorship and for presumptions to establish it in the absence of evidence.

Holding, as we do, that the presumptions provided for in Articles 936, 937, 938 and 939 of the Civil Code find occasion for application under the conditions and circumstances of these successions, we are of the opinion that the District Court correctly adjudged that Angele Langles survived her mother, Mrs. Pauline Langles, widow of John Langles. The consequence of that fact was correctly held to carry with it the non-existence of all the substituted provisions of the mother's will and to leave the original provisions of the same, the bequest to her daughter, in full force and effect.

The succession of the daughter, therefore, consists of the property held by herself at her death added to that accruing to her by inheritance from her mother under her mother's will.

Angele Langles having herself left a will, the substituted provisions of which were made to spring into existence by her survivorship of her mother, we are next to see how far the attacks made upon the same may be justified.

The District Court recognized the will of Angele Marie Langles except as to the legacy therein contained for the support of the Memorial Hospital built by her mother, and as to the appropriation of three thousand dollars for her tomb, both of which depositions of the said will being adjudged to be null and void.

We think the judgment of the District Court in all these respects is also correct, and we affirm it except as to the amount ordered to be expended for the testator's tomb, as to which we think there was error.

It was admitted on the trial "that all the individual legatees named in the wills are living persons capable of inheriting and receiving legacies, and that the other legatees are existing corporations capable of receiving bequests, if they be found to be legal. From the operation of this admission is excluded the bequests of the *residuum*.

Under this admission all of the legacies other than that of the *residuum* must be upheld. The exception made in the admission to the bequest of the *residuum*, and the view we take as to the sum of money directed by Angele Langles to be expended for the creation of her tomb, necessitates special reference to these matters.

The bequests of the *residuum* was as follows:

"After all debts paid, the remainder of my fortune I give to the support of the Memorial Hospital built by my mother." It was evidently contemplated by the testatrix, when she wrote this will, that her mother would, during her lifetime, have had constructed a Memorial

Hospital, and that at her death (the death of the daughter), this Memorial Hospital would be in existence, but the untimely death of the mother prevented her from carrying out this plan, and, therefore, when the daughter died, there was no hospital built by her mother, in existence, to whose support the *residuum* of the daughter's fortune could be devoted. The bequest, therefore, fell for want of an object to which it could apply.

We do not think that the direction of the testatrix that three thousand dollars should be expended by her executor for a tomb should fall from the fact that the body of the testatrix has not been recovered and can not be deposited in it. The word "tomb" has been defined among other meanings to signify "a monument or tombstone erected in memory of the dead."

We think this a proper occasion to give the word its broadest meaning, a monument in memory of the dead. We are surprised that the heirs of the deceased, inheriting her property under the circumstances they have, should have opposed, as they have, the carrying out of Angele Langles' wishes on this subject. They should have been willing to perpetuate her memory even in this slight way.

For the reasons assigned, we are of the opinion that the judgment of the lower court is correct, and it is hereby affirmed except in so far as it declared null and void and of no effect the appropriation made in the will of Angele Langles of three thousand dollars for the purpose of building a tomb for the testatrix, which portion of the judgment is hereby annulled, avoided and reversed, and the executor is ordered to carry into execution that provision of the will.

## ON APPLICATION FOR REHEARING.

MONROE, J. The City of New Orleans and Mrs. Emile Kuntz have applied for a rehearing, mainly upon the ground that the presumptions of survivorship, established by the Civil Code, are inapplicable to testamentatary successions, and from this point the arguments of the counsel representing the two opponents mentioned, as also those of counsel representing other parties in interest, diverge in support of different theories as to the law which should govern the case. It is not now contended by any one that the "circumstances of the fact" which are disclosed are such as to justify the court in holding that either of the decedents survived the other, or that they died simultaneously; the

counsel who have presented arguments in support of the application for rehearing, although disagreeing as to the disposition which should ultimately be made of the successions, concurring in the opinion that neither decedent has been affirmatively shown to have survived the other; that neither can, therefore, be held to have inherited from the other; and hence, that neither succession passes through the other, but that each is transmitted directly to those entitled to it, as though the other succession had never existed. The question, then, is, does the law of Louisiana, as applied to the case presented, so read, or intend?

The following provisions of the Civil Code are applicable to the subject, to-wit:

"*Art. 936.* If several persons respectively entitled to inherit from one another happen to perish in the same event, such as a wreck, a battle, or a conflagration, without any possibility of ascertaining who died first, the presumption of survivorship is determined by the circumstances of the fact."

"*Art. 937.* In the absence of circumstances of the fact, the determination must be guided by the probabilities resulting from the strength, age and differences of sex, according to the following rules.

\*          \*          \*          \*          \*          \*          \*

"*Art. 939.* If those who have perished together were above the age of fifteen years and under sixty, the male must be presumed to have survived where there was an equality of age or a difference of less than one year. If they were of the same sex, the presumption of survivorship by which the succession becomes open in the order of nature must be admitted, thus the younger must be presumed to have survived the elder."

Applying the rules thus prescribed to the case at bar, it would be presumed that Miss Angele Langles survived her mother, since they were "above the age of fifteen years and under sixty," and she was the younger. But it is said that this rule is inapplicable to testamentary successions; and an earnest effort has been made to sustain this proposition by appeals to reason and authority, and by the argument "*ab inconveniente.*"

Considering this last mentioned argument, first, we find that the learned counsel who represent Mrs. Emile Kuntz have this to say concerning the effect, in this case, of the application of the doctrine of the opinion which has been handed down, *to-wit:* "By the operation of law, in the absence of proof as to the happening of the conditions under

which alone the succession of the mother could have passed to the
daughter, the estate of Pauline Langles would have been transmitted to
the nearest of kin, to whom, by every tie of affection, as well as the
policy of the law, it should have passed. By giving effect to the legal
presumptions, one-half of the inheritance is conferred upon persons, to
whom she neither declared nor designed that it should revert. The
order of nature, instead of being pursued, is inverted, and the property
which she had accumulated passes to persons having claims neither
upon her affection nor upon her gratitude.

"If the present judgment is to stand, no portion of the estate will be
transmitted in accordance with the express desire of the testatrix.
None of the relatives mentioned in its legacies are to obtain the veriest
mite; none of the charitable bequests provided for are to be made
efficacious. Her estate is to be transmitted, not to *her* heirs, not to *her*
legatees, not to *her* beneficiaries, but to the heirs, beneficiaries and
legatees of *her daughter.* (Italics by the counsel.) Her affection for her
kindred is evidenced by the dispositions of her testament. * * * She
had every reason to believe that, unless her daughter survived, with the
exception of the legacies conferred in the will, all the residue of her
estate would pass to her heirs at law, should it happen from any cause
that the projected Memorial Hospital for Women and Children could
not be established, pursuant to the directions of her testament."

The opponent on whose behalf this argument is presented is a niece
of the late Mrs. Pauline Langles. But she is not mentioned in her
aunt's will nor in that of her cousin, Miss Angele Langles. Hence, she
will get nothing from either succession, unless it is held that Mrs.
Langles survived, and inherited from her daughter, or else that neither
survived, and that the two successions are to be disposed of independ-
ently of each other (in which case she would inherit, by representation,
from her aunt's succession), and unless, in any event, the principal
bequest in her aunt's will, *i. e.,* the bequest in favor of the Memorial
Hospital for Women and Children, is set aside and annulled. This
opponent alleges and has undertaken to prove that her cousin, Angele
Langles, was not likely to have survived her mother, and she prays in
her opposition, that Mrs. Langles be held to have survived and thereby
to have become the sole heir of her daughter, and that the legacies in
the will of Miss Angele Langles be held, therefore, to be of no effect;
or, that it be held that the deaths were simultaneous, and that both
wills are inoperative; or, in any event, that the depositions in favor of

the Memorial Hospital be decreed null, etc. Under these circumstances, and in view of the fact that the opponent's sole object in coming into court is to prevent the declared wishes of her aunt and cousin, concerning the disposition of their respective estates, from being carried into effect, the solicitude which is expressed in her behalf, lest that result should be accomplished otherwise than in accordance with the prayer of her opposition, may be readily understood.

But, although the hardship, if there be any, may fall upon different persons, it will be no greater, and hence the general consequences will be no more disastrous, that the estate of Mrs. Langles does not go to *her* heirs, or to *her* legatees, etc., but goes to those of her daughter, under the judgment as rendered, than it would be if the estate of the daughter should go, not to *her* heirs, or to *her* legatees, etc., but to those of her mother, as the opponent would have it. In the latter case, it is true that the opponent would participate in the distribution, but it is difficult to perceive what precise principle of law, or equity, would thereby be subserved, since Mrs. Langles seems to have done her best to exclude the opponent from such participation, and it can hardly be denied that she had that right. The proposition that because she made a will disposing of the whole of her estate to the exclusion of the opponent, she thereby intended to show her affection for the latter and to secure to her a portion of the estate from which she was excluded, involves, as it seems to us, a paradox, the clue to which we have been unable to discover, possibly because of our inability to follow the learned counsel in the attempt to show that we shall be conforming to the wishes of the two testatrices by decreeing, acording to the prayer of the opposition, that none of those wishes, as expressed in the testaments before us, shall be carried into effect, but that the opponent, who, by the terms of both testaments, is entirely excluded from both successions, shall, nevertheless, participate in the distribution of one or both. We pass on, then, to the opponent's appeal to reason and authority.

It is said that our law, like that of France, and unlike the law of Rome, favors the transmission of property, not by testament, but by what is called "natural descent," to the nearest of kin. "Legal succession," say the learned counsel for Mrs. Kuntz, "is the intent of the law; it *favors* legal succession; it *permits* testamentary disposition. In so far as its policy can be indicated by legislative enactment, it endeavors to mark the distinction. While reserving to the individual the right

of disposing of his property (and this with the limitations marked by the *legitime*) it has required that he shall make his dispositions subject to those conditions, and every condition, imposed by law. With respect to legal successions, which it favors, it attempts by every possible means, to encourage the order of nature which it designs to perpetuate * * * pursuant to this disposition in our law, to favor the order of nature, and to so direct when it replaces the intestate that a man's posterity, or his ascendants, or his nearest of kin in the collateral line, shall enjoy the fruits of his accumulations; in its zealous endeavor to secure this end it has provided means that are denied to those whose claims to a gratuity conferred is founded merely upon the desire of the testator. * * * The law has no desire, except with regard to natural heirs, to see that any property shall go to the persons to whom it may please the fancy of the testator to transmit it. Its object is to protect its own policy as to the doctrine of transmission, to keep the property within the family, to follow the order of nature, and to see that children, and, in the absence of children, ascendants, and, in the absence of both, the nearest collaterals, shall enjoy the inheritance. Therefore, in relation to these two classes of successions, the law has decreed certain evidentiary requirements as to both, but a special presumption as to the one of them. As to the commorientes, he who claims by testament is obliged to establish, affirmatively, and by evidence, the survivorship of the person from whom it is pretended that the property was transmitted to the claimant; and if he fail to establish the existence of his author, under the article of the Code, which is written under the title of "Donations and Testaments," the testamentary disposition is ineffective—there is caducity. But if his right is derived from the operation of law; if his claim be in harmony with the design of favoring the order of nature; if there has been no will, and his title is of the kind which it is the settled policy of the State to encourage, out of the very necessity which arises that there should be no vacancy, no lapse, no suspension, no moment at which there shall cease to be actual ownership, a contingency possible solely in the case of successions *ab intestato*, and only under the very circumstances provided against in Article 936, and one which can never occur where there has been a testamentary disposition, there is established a presumption of ownership."

When we consider the facilities which are afforded for the making of testaments in this State, and the solicitude which the courts have

always exhibited to maintain testaments when made, the idea suggests itself that the learned counsel may, perhaps, be pressing their argument as to the policy of the law beyond the support upon which it rests. But let us accept it as sound and apply it to the instant case.   Miss Angele Langles was the daughter of Mrs. Pauline Langles.   She and her mother were, respectively, entitled, by law, to inherit from one another.   She was over fifteen years of age and her mother was under sixty; and they perished in the same "wreck  *  *  *  without any possibility of ascertaining which died first."   Under these circumstances, there can be no doubt, for the purposes of the question, whether the mother should inherit from the daughter, or the daughter from the mother, or whether neither should inherit from the other, that it is the policy of the law that the daughter should have inherited from the mother, since the law provides that the daughter, surviving the mother, shall inherit from her, and declares, in terms, that, in the precise case stated, "the younger must be presumed to have survived the elder." And the policy of the law, as thus indicated and declared, has been carried out in the judgment of which the learned counsel complain, and which holds that the daughter survived the mother and, therefore, inherited her estate; and that the natural and legal order of succession was thereby established.   But the argument to which we have referred holds that by reason of the fact that these, mother and daughter, who, by law, were, respectively, entitled to inherit from one another, made wills, each in favor of the other and in strict conformity, therefore, to the supposed policy of the law, they thereby took themselves beyond the reach and effect of that policy, and should be denied the presumptions established in favor of those who conform thereto, and the counsel concludes as follows:

"The only method by which it is possible, even approximately, to carry out the intention of the two *commorientes* is to pursue the usual and accepted practice, and the orderly course of law; to adopt that theory of the law which is consonant with the truth of the fact, and to declare that it is impossible to determine which of the two, perishing in a common event, survived the other."

It seems to us that this conclusion is a complete *non-sequitur,* with respect to all that has been heretofore stated concerning the law, and the policy of the law, which it purports to express.   If the law favors the transmission of estates to the nearest relative of the deceased it would be unreasonable to hold that it disapproves of measures taken to

secure that result. And when, as we find in this case, it establishes, under particular circumstances, a presumption of survivorship between persons respectively entitled to inherit from one another, no good reason has been suggested why such persons should be held to forfeit the benefit of such presumptions, because, by their wills, respectively, they undertake to dispose of their estates in favor of each other and thus to conform to that policy and subserve the purposes for which the presumption in question is established.

If, therefore, it is true that, upon construing the provisions of the Code upon the subject of "successions," with those which relate to "donations" *mortis causà,* it necessarily results that the presumptions established in order to secure the transmission of property according to the policy of the law are destroyed in all cases where testaments are made transmitting property according to such policy, it must be admitted that such a result is equally illogical and unfortunate, and ought not, therefore, to be accepted if the law to be construed is susceptible of any other interpretation.

It is said, however, that Article 936 *et seq.* of the Civil Code are found under the title "Legal Successions," the provisions of which are intended to apply exclusively to successions *ab intestato,* and, hence, that, by reason of their position, it must be held that these articles are inapplicable to testamentary successions. The proposition is thus stated in the argument of the counsel: "Therefore * * * the provisions embraced under the title 'Legal Successions' are restricted, exclusively, to successions by the operation of the law, unless, by the positive declaration of a given article, its operation is extended to dispositions *inter vivos* and *mortis causa.*" This observation is applied to Articles 936, 937, 938, 939, which establish the presumption of survivorship, as we have seen, with respect to certain persons, under certain circumstances, and without specific reference to whether they die testate or intestate. Now, the preceding article under the same title (Article 935), reads: "The place of the opening of the succession is fixed as follows," etc., and the article goes on to prescribe where successions shall be opened, also without specific reference to whether they are testamentary or *ab intestato.* Yet, it will hardly be contended that this article is inapplicable to testamentary successions; so that it follows that the proposition of the learned counsel is too broadly stated when applied to the Civil Code of Louisiana; and an examination of the different commentaries upon the Code Napoleon to which we have been

referred, leads to the conclusion that, as stated, it is not sustained by those authorities. It is, no doubt, true that a majority of the French writers are of the opinion that Article 720 *et seq.* of the Code Napoleon, which correspond with Article 936 *et seq.* of our Code, do not apply to cases where the persons who perish together are entitled to inherit from each other *only* by reason of reciprocal testaments, *and not otherwise.* And it is also true that unless the particular case of *commorientes* who are at once the heirs at law and the instituted heirs of each other is specially mentioned, the opinion referred to is enunciated in such general terms as, perhaps, *prima facie,* to warrant the inference that it relates as well to the case stated as to the case of *commorientes* who are entitled to inherit from one another by virtue of testaments alone. But where the fact is at all recognized that the *commorientes* may be the heirs *ab intestato* as well as the testamentary heirs of each other, so far as we have been able to discover, the further fact is also recognized, that such a case constitutes an exception to the rule of the inapplicability of the presumption of survivorship to testamentary successions, and we have been referred to no author and have found none who holds, specifically and affirmatively, that the heir at law in whose favor the presumption of survivorship is established is deprived of the benefit of that presumption because the person from whom he is entitled to inherit has chosen to make a will in his favor. Nor does the reason of the law sustain such a conclusion—quite the contrary. Troplong, in dealing with this particular question, says:

"Then the son, being at the same time instituted heir and heir *ab intestato,* the survivorship must be established by the law of legal successions, because the two rights are fused together, and what the law decides in behalf of the heir *ab intestato* can not be destroyed by the disposition of man, making him a testamentary heir. Is there anything which can prevent this son from being the legal heir of his father? No, indeed; and certainly the testament made to benefit him can not impair this imperishable quality. It is, therefore, clear that he will preserve the benefit of the presumptions which the law has intended to attach to it, and that he will preserve this even if he unites to the right of heir *ab intestato* the right of testamentary heir, which fortifies it." Troplong, Donations and Testaments, Vol. 3, pp. 635, 646.

Applying these observations to the case at bar, Mrs. Langles and her only daughter, an unmarried woman, were not only the legal heirs, but,

for a certain portion of their respective estates, were the forced heirs of each other. To them, the law said: "If you perish in the same wreck, without any possibility of ascertaining which died first, that question will be determined by a presumption which is established in the interest of the natural order of successions, and agreeably to which, in your case, it will be held that the daughter survived the mother." No one denies that this was the law before the making of the two wills which have been submitted for our consideration, and before the makers of those wills sailed upon their last voyage; and no one denies that it then applied to those two ladies. But, it is said that this law was abrogated and annulled by the making of the wills; and the inquiry is thus suggested; if the law, in unqualified terms, established a presumption, as a result of which, in the event of their perishing in the same wreck, Miss Langles was to have been held to have survived, and to have inherited from her mother, which presumption, the heirs, legatees, and creditors, of Miss Langles, were authorized to invoke in the contingency provided for, upon what theory of law could Mrs. Langles, by any act of hers, deprive her daughter and her daughter's heirs, legatees and creditors of the benefit of the presumption thus established *by law* in their behalf? And upon what theory of reason, assuming that she had the power to accomplish such a result, must she be held to have done so, when it is manifest that she had no intention of interfering with such presumption, but that she was doing the best she could to transmit her estate in accordance with the policy of the law, in support of which the presumption in question was established?

If these two ladies had not been entitled *by law* to inherit one from the other, it might have been said (and that is what we understand the majority, though by no means all, of the French writers to say) that they could not, by conferring such right, each upon the other, by means by their respective testaments, also confer, each upon the other, the benefit of the presumption of survivorship, since that presumption is established by law in favor of persons who are entitled to inherit each from the other, irrespective of their testaments, and is not a benefit, or advantage, which is to be considered as lying about at large and which any two persons can confer upon each other, at their option, by making wills in each other's favor. But, being as they were, the question was not whether Mrs. Langles and her daughter, by their joint action, could *acquire* the benefit of the presumption of survivorship, but whether, being already, and by operation of the law, entitled to the full benefit

of that presumption, the one of them could be *deprived* of it by the
other, and, if so, whether she must be held to have been so deprived,
not only without any indication that that other intended to deprive her,
but in the face of an act affirmatively indicating a contrary intention?
And these questions, we think, for the reasons which have been given,
should be answered in the negative.

The learned counsel for the City of New Orleans argues that Article
936 *et seq.* of the Code, establish a presumption of survivorship only in
cases where (as we understand the argument) the fact of survivorship
is otherwise established or rendered probable. They say, referring to
the articles in question: "They were never to control cases in which
the supposition of survivorship is repelled by the known facts, or
made highly improbable." It is, however, conceded that the *commori-
entes* in this case perished in the same wreck, "without any possibility
of ascertaining which died first"; and we are unable to say that the sup-
position of survivorship is repelled by the known facts. On the con-
trary, the case is within the letter and spirit of the law establishing the
presumptions upon that subject. If persons perish in the same event
"such as a wreck, a battle, or a conflagration," it is not to be supposed
that either has survived for any great length of time, since such events
do not, ordinarily, last for any great length of time. As a fact, Miss
Langles may not have survived her mother at all, or she may have
survived her during the smallest conceivable subdivision of time. But
we have nothing to do with those matters. The facts with which we
have to deal are those which the law requires as the basis, not of the
fact, or the duration, of the survivorship, but the *presumption* of
survivorship, *i. e.*, that the persons who perished were entitled to
inherit from each other; that they perished by the same event; and
that, being of the same sex, they were over fifteen years of age and
under sixty, respectively. These facts being established, the presump-
tion follows, with the consequence, that the person who is presumed to
have survived inherits from the other, exactly as though such survival
has been established as a fact. The learned counsel asks the question:
"Did the testatrix in each will mean to say I endow a hospital, but if we
are killed in a wreck and I die thirty seconds before you I withdraw the
endowment from the hospital and give all I possess, not to my heirs,
but to your heirs, whether I know them or not, whether their relations
with me have been friendly or otherwise?"

And from this it is argued that, conceding that Angele Langles sur-

vived her mother, and conceding that, by the terms of the will, she inherited her mother's estate; nevertheless, as the survival was not long enough to enable her to use or enjoy the inheritance, it ought to be decided, in this case, that she never inherited at all. Probably, if it had been proved, as a fact, that Miss Langles survived her mother, this argument would not have been presented. If she had survived, say, for five minutes, and had devoted that time to the writing of another will, and the will had been here presented, it is reasonably certain that the argument would not have been presented. And yet, the results, so far as Mrs. Langles' wishes are concerned, would have been the same. Her endowment of the hospital would have been withdrawn and her estate would have gone to the heirs of her daughter and not to her heirs. It is to be regretted, no doubt, that the pious and benevolent intentions of the two ladies, whose estates are here in controversy, can not be carried into effect, but the law which regulates the transmission and distribution of estates, whether *ab intestato* or by means of testamentary dispositions, is a rule of property which concerns the living as well as the dead, and as to the duty of applying which the courts have no discretion.

Rehearing refused.

PROVOSTY, J., takes no part, this case having been submitted and decided prior to his taking his seat on this bench.