ELLIS, Judge.
Octave Robert died on August 11, 1959 and his last will and testament dated February 8th, 1959 in statutory form as provided in LSA-R.S. 9:2442 was duly filed for probate by the testamentary executor, Albert Robert. In his will decedent left to each of his children, Albert, Norma, Hilda, Emile, Corinne and Blanchard a portion of a five acre tract particularly described as to each *529 according to previous survey made by Civil Engineer John H. Sollberger on Feb. 4, 1959. For brevity we attach a sketch of the survey rather than the legal descriptions of the property, which identifies the portion willed to each of his children. The will also provided “that Albert is to receive an extra portion of my estate.” There being no other property belonging to the testator it is clear that he intended and believed the tract bequeathed to Albert shown on plat reproduced below included the extra portion.

On September 9, 1959 the will was duly probated, letters testamentary were issued to Albert J. Robert and an inventory was ordered to be taken by Thomas W. Tanner, Notary Public of St. Tammany Parish. The inventory was filed appraising the real estate, together with the improvements thereon at a total valuation of $10,000.00. On November 5, 1959, a petition, verified only by Albert J. Robert and allegedly filed on behalf of Blanchard J. Robert, Emile D. Robert, Norma Robert, Hilda Robert, Corinne Robert and Albert J. Robert, the children and forced heirs of the decedent, Octave Robert, in which they prayed to be placed in possession of all property left by the decedent of whatsoever kind and character, of the property particularly described in the inventory, particularly the proportions and descriptions as set forth in the statutory will. Accordingly, judgment of possession was read, rendered and signed in Covington on the 6th day of November, 1959, sending the heirs in possession of the respective tracts that the decedent had willed to them.
On December 18, 1959 Blanchard Robert and Emile Robert filed a petition seeking to vacate and annul the judgment placing the heirs in possession of the respective tracts in accordance with their father’s last will and testament. Petitioners further prayed in the alternative that should the last will and testament be declared “of full legal force and effect, then the bequest to Albert Robert be reduced to its proper portion”. They also sought to have Albert Robert removed as testamentary executor and that a proper inventory of the goods and effects of the estate be made after the setting aside of the original inventory.
*530 An answer was filed by Albert Robert, Norma Robert, Hilda Robert, and Corinne Robert, generally denying the plaintiff’s petition. It further set forth the facts that Blanchard Robert was present and knew about his father’s will even having read same and knew which portion of property he was to get. The answer further alleged that Blanchard Robert never did inform the testamentary executor, Albert Robert, that he intended to contest any of the succession proceedings.
The case was duly tried and the trial court amended the original judgment of possession dated November 6, 1959 and recorded in COB 280 page 416 of the records of St. Tammany Parish, Louisiana, by providing for road rights of way on the west fifty feet belonging to Albert Robert and a fifteen foot wide strip along the north line of the property of Hilda Robert and a fifteen foot strip .along the south line of the property of Emile Robert.
The written reasons for this portion of the judgment are concisely stated in the dower court’s reasons as follows :
“By taking a road fifty feet (50') wide from the property of Albert across ■the West side and along the border line •of Emile and Hilda connecting with -the Bayou Liberty Road and reduce Albert’s property value and then by -running a road thirty feet (3O’) wide •taking fifteen (15') from Emile and ■fifteen feet (15’) from Hilda along the ■south line of Emile and the North line • of Hilda and give a thirty foot (3O') ■road back to the property of Blanchard .and Corinne will enhance the values of the property bequeathed to Emile, Hil■da, Corinne and Blanchard, and will give the general relief prayed for by all parties.”
The Lower Court also ordered, adjudged •and decreed that the improvements located • on the property allocated Albert Robert “be .and is hereby declared to be community •property of Octave Robert and Anna Zan- ■ der Robert of a value for Nine Hundred and no/100 Dollars ($900.00) and that said property be sold for at least two-thirds of its value, one-half of the proceeds of the sale payable into the estate of Octave Robert and one-half payable into the Estate of Anna Zander Robert, free of all costs with the exception of prorata costs of sale.”
The court then ordered that the demands of the plaintiffs be dismissed and ordered them to pay all costs of these proceedings.
From this judgment the plaintiffs, Blanchard and Emile Robert, have appealed. Motion was filed on January 16, 1962 in per-sonam by counsel of record for Emile Robert requesting an order from this court that he be permitted to withdraw “from this cause as attorney for Emile Robert and that his name be erased from the record as Attorney for Emile Robert only.” However, we have no motion or request by Emile Robert for a dismissal or abandonment of his appeal and he is, therefore, considered as before the court on this appeal.
There has been no answer to the appeal by anyone of the defendants.
The first question to be decided is whether the district court had a legal right to render the judgment amending the judgment of possession by providing for a road by excepting from the original judgment of possession a fifty foot strip along the west line of Albert Robert and a fifteen foot strip to be taken along the north line of the property of Hilda Robert and fifteen feet along the south line of the property of Emile Robert, thereby changing the area and description of the property as bequeathed by the terms of the will, which also had the effect of changing the partition made by the testator' in the will.
There is no allegation nor prayer in the plaintiff’s petition nor in the answer of the defendants alleging or requesting such a disposition of the case, and the testimony upon which this judgment was based was objected to ab initio and should have been sustained. Furthermore, the judgment would not solve the problem as it merely takes away from Albert 5(y across his west *531 line and from Hilda and Emile 15' north and south of their common line for somebody to build a road on it. At whose expense or what it will cost is nowhere shown in the record. It does show that the back four lots have a heavy growth upon them which, of course, would have to be removed in order to build such a road. The value of the property taken for the road is not fixed in the record. In addition, the testimony along this line was to the effect that if there was such a road constructed then the property of Hilda, Emile, Blanchard and Corinne Robert would be enhanced in value from $500.00 each to approximately $1500.-00 to $1700.00 each.
The best reason for the illegality of the judgment is that the courts are not authorized to change a partition of the property by the testator other than as authorized under the Articles of our Civil Code relating to such partitions and the jurisprudence interpreting these articles.
Chapter 7 entitled “OF PARTITIONS MADE BY PARENTS AND OTHER ASCENDANTS AMONG THEIR DESCENDANTS,” in Title II of DONATIONS INTER VIVOS AND MORTIS CAUSA is particularly applicable to the case at bar and we quote the articles therein as follows:
Article 1724: “Fathers and mothers and other ascendants may make a distribution and partition of their property among their children and legitimate descendants, either by designating the quantum of the parts and partitions (portions) which they assign to each of them, or in designating the property that shall compose their respective lots.”
Article 1725: “These partitions may be made by act inter vivos or by testament.”
Article 1726: “Those made by an act inter vivos can have only present property for their object, and are subject to all the formalities and conditions of donations inter vivos.”
Article 1727: “Those made by testament must be made in the forms prescribed for acts of that kind, and are subject to the same rules.”
Article 1728: “If the partition, whether inter vivos or by testament has not comprised all the property that the ascendant leaves on the day of his decease, the property not comprised in the partition is divided according to law.”
Article 1729: “If the partition, whether inter vivos or by testament, be not made amongst all the children living at the time of the decease and the descendants of those predeceased, the partition shall be null and void for the whole; the child or descendant who had no part in it, may require a new partition in legal form.”
Article 1730: “Partitions, made by ascendants, may be avoided, when the advantage secured to one of the coheirs exceeds the disposable portion.”
Article 1731: “The child who objects to the partition made by the ascendant, must advance the expenses of having the property estimated, and must ultimately support them and the costs of suit, if his claim be not founded.”
Article 1732: “The defendant in the action of rescissions may arrest it by offering to the plaintiff the supplement of the portion to which he has a right.”
Article 1733: “The rescission of the partition does not carry with it the nullity of a donation made as an advantage.”
*532 In the Succession of Meyer, S.Ct., 198 La. 53, 3 So.2d 273, the Court stated:
“The plaintiff cites articles 1724 to and including 1733, which compose Chapter 7 of Title II of Book III of the Civil Code, which is the chapter entitled ‘Of Partitions Made By Parents And Other Ascendants Among Their Descendants’. In this chapter it is provided that fathers and mothers and other ascendant relations may divide their property among their children or other descendants, either by a donation inter vivos or by last will, provided the donor or testator shall not give to any one of his heirs more than the disposable portion of the estate. The plaintiff here relies particularly upon Article 1730, which, by reason of a fault in the translation from the French text, purports to give to a forced heir the absolute right to ‘avoid’ or annul a partition made by his ancestor among the heirs, if the property given to one of the coheirs exceeds in value the disposable portion of the estate. As translated the article reads thus:
“ ‘Partitions, made by ascendants, may be avoided, when the advantage secured by one of the coheirs exceeds the disposable portion.’
“In the Compiled Edition of the Civil Codes of Louisiana, Vol. 3 of the Louisiana Legal Archives, Part I, p. 951, the compilers say that the word ‘avoided’, in this article, is an erroneous translation and means ‘objected to’. In the corresponding article of the Code of 1825, which is article 1723 the word in the French text is attaque, which means ‘attacked’. The corresponding article in the Code Civil Francais is article 1079, and there also the word is attaque; and in the translation by Henry Cachard the word is ‘attacked’. In Article 1732 of the Revised Civil Code of Louisiana it is provided that the defendant in such a suit may put an end to it ‘by offering to the plaintiff the supplement of the portion to which he has a right’. Which means that the right of action of an heir to whom is given less than his legitimate portion in a partition made by his father or mother or other ascendant relation, among the coheirs, is not an absolute right to annul the partition, for it is subject to the right of the defendant or defendants to put an end to the suit by contributing an amount sufficient to make up the plaintiff’s legi-time.’ ” (Emphasis added)
Counsel for the plaintiff does not question the right of the testator to dispose of his property by partition in his will, but he is restricted by the laws of Louisiana from giving more than the disposable portion to any one or more heirs, and should he do so, “the will is not struck with nullity but the bequests are reduced to the disposable portions.” LSA-C.C. Arts. 1502 and 1732.
As to the question of the legality of the judgment of the Lower Court, we believe the authorities cited by counsel for plaintiff in his brief expressly prohibit any alteration or changes in the terms of the testator’s will and we quote such authorities from plaintiff’s brief as follows:
“In Maguire vs. Maguire, 110 La. 279, 280 [34 So. 443] the Court said (used this pertinent language) :
“ ‘Construction must not be placed upon wills so as to put in the mouth of the testator that which he refrained from saying. We must take his will as he has written it.’
“And the Court refers to City [of New Orleans] vs. Hardie, 42 [43] La. Ann. 251, 9 So. 12 and Ball vs. Ball, 40 La.Ann. [284], 285, 3 So. 644.
“In the case of City vs. Hardie, 42 [43] La.Ann. 251 the Court said at the bottom of page 252 [253, 9 So. 12, at page 13]:
*533 “ ‘It has been well said that, in interpreting or construing a will the intention of the testator is the polar stat by which the court is to be guided; and that it is the duty of those who have to expound a will to ascertain the quod voluit by realizing the quod dixit.’
“In Ball vs Ball 40 La.Ann. 285 [284] on Page 285 [3 So. 644, on page 645] the Court said:
“ ‘We are not at liberty to conjecture what would have been his wish on this subject if he had foreseen the actual result of this liquidation. We must take his will as he has written it.’
“These cases are cited with approval in the Succession of Price 202 La. [842] 855, 13 So.2d 240, at page 855 (In Louisiana Report):
“There the Court said:
“ ‘As has often been announced, however, it is not within the province of courts to frame new wills for parties. The judiciary shall only give effect to the expressed and not the conjectural or probable intention of testators. Suc. of Langles 105 La. 39, 29 So. 739; “While in the interpretations of wills the intention of the testator is to be the guide of the courts such intention must be gathered from the quod dixit. Construction must not be placed on wills so as to put in the mouth of the testator that which he refrained from saying. We must take his will as he has written it.” ’ “City vs. Hardie, 42 [43] La.Ann. [251], 9 S [So.] 12; Ball vs. Ball, 40 La.Ann. 284, 3 So. 654 [644] ; Maguire v. Maguire, 110 La. 279, 34 So. 443, 445.”
Before proceeding with the main question in the case as to whether the bequest to Albert Robert exceeds the disposable portion, and if so, the amount of the reduction, we note in brief of counsel for plaintiffs that he is under the impression that the allegations of his petition and prayer entitle him to a reduction in the bequest to Norma Robert. Nowhere in the main allegations does he mention the name of Norma Robert, nor is it mentioned in the prayer. He alleges a collation due by one of the heirs without naming that heir, and on the trial there was some testimony that the testator had previously sold to Norma Robert a piece of property for $100.00, however, there was no further testimony on the subject nor is there a prayer for collation. The testimony would be totally insufficient even if it were requested. The allegation and prayer touching upon the disposable portion was that “The part bequeathed to Albert Robert was greater than the disposable portion. * * * ”, and a prayer in the alternative “ * * * that should the last will and testament be declared in full legal force and effect, then the bequest to Albert Robert be reduced to his proper portion.”
Under Article 1493 of the LSA-Civil Code the disposable portion or legitime is fixed as follows:
“Donations inter vivos or mortis causa can not exceed two-thirds of the property of the disposor, if he leaves, at his [death] a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.
“Under the name of children are included descendants of whatever degree they be, it being understood that they are only counted for the child they represent.”
LSA-Civil Code Article 1495:
“In the cases prescribed by the two last preceding articles, the heirs are called forced heirs, because the donor can not deprive them of the portion of his estate reserved for them by law. except in cases where he has a just cause to disinherit them.”
*534 LSA-Civil Code Article 1501:
“The disposable quantum may be given in whole or in part, by an act inter vivos or mortis causa, to one or more of the disposer’s children or suc-cessible descendants, to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is .intended to be over and above the legitimate portion.
“This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witness.”
LSA-Civil Code Article 1502:
“Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum [or part] a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.”
The method of calculating the disposable portion on the mass of the succession is precisely set forth in LSA-Civil Code, Article 1505 which we quote:
“To determine the reduction to which the donations, either inter vivos or mortis causa are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor’s decease, in the state in which it was at the period of the donation.
“The sums due by the estate are deducted from this aggregate amount, and the disposable quantum is calculated on the balance, taking into consideration the number of heirs and their qualities of ascendant or descendant, so as to regulate their legitimate portion by the rules above established.”
The will of the testator expressly bequeaths to Albert Robert an extra portion which is fixed by Article 1493 of the LSA-Civil Code at one-third and by LSA-Civil Code Article 1502 should the disposal of property exceed the quantum of that which the testator might legally dispose of to the prejudice of the other children, it is not null but only reducible to that quantum, and by LSA-Civil Code Article 1505, in order to determine the reduction to which the donation by the testator in the case at bar is liable, it is necessary that we take an aggregate of all the property belonging to the testator at the time of his death and any sums due by the estate are deducted from this aggregate amount, however there is none due in the case at bar, and the disposable quantum is calculated on the balance, taking into consideration a number of heirs, in the case at bar, six.
The aggregate of all the property belonging to the testator at the time of his death was the five acres of land fronting 421 feet on the north side and 259 feet on the south side of the black topped road which ran through the property diagonally, known as the Bayou Liberty Road. The property was approximately 325 feet along its eastern boundary, 625.5 feet along its northern boundary, and 330 feet along its western boundary, and 600 feet along its southern boundary. Located on the portion of the property bequeathed to Albert Robert was the old family home approximately forty to fifty years old which was built during the marriage of the testator and his predeceased wife and is therefore community property. The real estate was purchased prior to the marriage and was the separate property of the testator.
In an attempt to arrive at the value the testimony of five expert appraisers was offered in evidence. R. L. Dunham and Emile Ouillebert, expert appraisers, offered on behalf of the plaintiffs, fixed the value of the total property, meaning land and im *535 provements, at $4700.00 and itemized as follows :
Portion designated as Albert Robert:
Land $1500.00
Improvement 1500.00 $3000.00
Portion designated as Norma Robert: 500.00
Portion designated as Hilda Robert: 300.00
Portion designated as Emile Robert: 300.00
Portion designated as Blanchard Robert: 300.00
Portion designated as Corinne Robert: 300.00
It was shown that Mr. Ouillebert was in the building supply business and was an appraiser for the Slidell Homestead Association and had made the appraisal with R. L. Dunham. He had been an appraiser approximately twenty years and had also appraised other succession property. He and Dunham testified to the above break down of the total value of $4700.00 which they placed on all the property of the testator as -of the time of his death. They did testify •that they placed a value of about $1500.00 .an acre on the piece bequeathed to Albert Robert and $1000.00 an acre on the piece .across the road bequeathed to Norma Robert which was also in a triangular shape -with a church dividing it but fronting on the black topped Bayou Liberty Road as •shown by the map marked “Norma.” As to the valuation of $1500.00 placed on the "house, this was done “by looking at the house. We didn’t go in it because we -couldn’t get in it. The general appearance, its a wood frame building with a metal roof.” On cross examination Ouillebert .admitted he did not know the condition of the house other than “we stood off and looked at it.” The foundations were not inspected but they did testify that it had a -metal roof.
Mr. Dunham had been an appraiser for the Slidell Homestead Association for three •or four years, and although he, like Mr. •Ouillebert, had no schooling in appraisals, he was also engaged in the real estate business and his appraisal was based upon a •comparison of the property “in that locality that I had appraised before where loans had "been applied for with the homestead asso-ciation.”
Mr. Gus Baldwin, an attorney and realtor in and around Slidell, Louisiana, where the property in question is located, just out of Slidell on Bayou Liberty Road, testified on behalf of the plaintiff as to values. He fixed the value of the Albert Robert portion at $8000.00 which he based upon a value of $20.00 per front foot for 400 feet on all property on the Bayou Liberty Road. He also compared it to a sale of property fifty feet front approximately ^ mile west which had sold for $1000.00. He cited property listed, which he referred to as the Higgins property, with an 85 foot front which “I think that probably the actual value is about $20.00 a front foot on the black top road.” He valued the improvements on the Albert Robert property which consisted of the old home and a kitchen a slight distance away at not more than $1400.00 or $1500.00 and in summation he thought a conservative value of the whole piece of Albert’s property would be $8000.00.
Mr. Baldwin fixed the value of the property of Emile, Hilda, Blanchard and Corinne shown on the map to the rear of the Albert Robert property at three or four hundred dollars per acre and “the most generous figure that I could put on there would be about as, say $500.00,” and as these pieces contained approximately % of an acre if we accept the $500.00 they would each be worth about $375.00.
He placed a value of $20.00 a front foot on Norma’s property on the blacktopped road, which is a triangular shape and cut in two by the church and her property has a frontage of approximately 259 feet.
Thus the valuation placed upon all the property of the testator was approximately $16,000.00 and it is estimated by counsel for the defendant at $15,300.00. Mr. Baldwin did not go over the properties bequeathed to the four children as being to the rear of Albert Robert’s property. Apparently the house was given a very casual inspection, for, as in the case of Dunham and Ouille-bert, Baldwin did not go in the house noi look under the house nor make any close in *536 spection of it. He merely described what it looked like from outside and placed an evaluation.
Offered on behalf of the defendants as expert appraisers were Henry Breeding and R. C. McIntosh, but in view of the fact that the latter assisted the former in his appraisal and his testimony is cumulative and corroborative, we will discuss the testimony of Henry P. Breeding.
Mr. Breeding was 30 years old and a licensed realtor and real estate broker living in Slidell, Louisiana who had made numerous appraisals for the Whitney National Bank, Standard Oil Company, Federal Housing Administration, State of Louisiana, and was at that time under contract to make about 80 to 100 more for various individuals and companies. He was a member of the St. Tammany Board of Realtors, the State Association, the National Association, and Farm Brokers and had attended numerous seminars all in relation to appraising and completed a course in Tulane University in appraising.
Breeding and McIntosh had made the original appraisal for the inventory. On that inventory the property was valued as one parcel at the sum of $10,000.00. In their opinion, the various parcels as divided by the testator, would be valued at $5900.00 for the Albert Robert property, $2000.00 for the four lots to the rear of it, viz., Corinne, Blanchard, Emile and Hilda Robert, and the property of Norma across the Bayou Liberty Road from Albert’s property, also in the shape of a triangle, at $1800.00. The old home and small kitchen to the rear were valued at $300.00, making a total of $10,000.00.
On the trial of the case Breeding testified that he had arrived at these figures or values by the use of comparables in the vicinity and he named them. However, he had arrived at the value of $5900.00 for the property of Albert Robert by drawing a parallel line with the highway at a depth of 150 feet from the highway and a length equal to that on the highway of 421 feet and, accordingly, by comparable values had placed a value of $14.00 a foot or $5900.00 on this piece of property. When questioned as to the method by which he had arrived at the value of Albert’s property, he testified that upon realizing that the property was in the shape of a triangle and could not possibly extend 150 feet in depth for the whole 421 feet he corrected his estimate and fixed a value of approximately $10.00 a foot or $4200.00.
As to the value of $300.00 for the buildings on the Albert Robert property he stated: “It’s obsolete, it’s badly in need of repairs, the original construction is poor and the house is actually about fifty years old and the normal life expectancy of a frame building, kept in reasonable repair is accepted to be between forty and fifty years. This house was apparently built of low grade construction material and consequently, is in extremely poor condition.”
While the testimony of McIntosh, who had been in the real estate business five years and had gained his experience as an assistant to Breeding in appraising property, was fully corroborative of the latter’s testimony, he did testify fully with regard to the value of the house or home on Albert’s property. He stated that he went through the house and in his opinion it has no value except for salvage which would be about $300.00. He walked through it from one end to the other and described it as having “four rooms and a porch, no bath, constructed of weather board siding, with brick pillar foundation and corrugated iron roof, had a single floor, I believe of pine, inside partitions are beaded ceiling and the outbuilding, which I was under the impression was used as a shed, also in very poor condition. I figured the building was built about 50 years ago and from the shape of the building, it seems to me they had signs of termites and from the shape of the building, the condition the building was in, I believe that all you could use it for was salvage.” This witness also stated that the floors gave way when he would *537 walk on them but did add “maybe it was my heavy weight, * * *
The Lower Court in commenting upon the testimony relative to the value of the land, stated in his written reasons:
“The Court has before it an abundance of testimony relative to the value of the land ranging all the way from the sublime to the ridiculous * * * ”.
We can somewhat understand the difference in the amounts of the appraisals when we consider that the lowest appraisal of $4700.00 was made by two well qualified appraisers who regularly did this kind of work for the homestead association upon which the latter loaned money, whereas Mr. Baldwin is in the sales end of real estate and is optimistic and more than likely unconsciously a booster of real estate prices. On the other hand Mr. Breeding is a regular appraiser for many large concerns, companies, including the State of Louisiana, and would tend to be more conservative than one strictly engaged in the sale of Real Estate. It would appear that the testimony of Breeding and McIntosh should be accepted as it was made strictly upon the comparable sales method, using property within the vicinity to one-half mile away. It appeared that they had made a closer inspection of the land and the buldings. We will, therefore, accept the following values:
The Albert Robert Property $4200.00
An undivided % interest in the house 150.00
The property bequeathed to Hilda, Corinne Blanchard and Emile Robert . $500.00 each 2000.00
Property bequeathed to Norma Robert 1800.00
making a total value of the property of the testator at the time of his death of $8150.00.
While the testator did not specifically bequeath his undivided one-half interest in the home which is half of the community property we believe that he intended the improvements to go with the land which he bequeathed to Albert, which must be limited to testator’s undivided one-half interest therein, as the six children had inherited the undivided one-half interest of the pre-deceased wife prior to the date of the testator’s death.
We therefore will use the value of $8150.-00 for calculating the legitime or disposable portion.
 Albert is entitled under the will to % or % as an extra portion of the $8150.00, and % as a forced heir, for a total of %ths, while each of his brothers and sisters would be entitled to %th each. Albert’s %th that he could receive (after reduction) would amount to $3622.20. The legacy of $4,350.00 worth of property exceeded the amount he could legally receive by $727.80. In view of the fact that Norma received property valued at $1800.00 when all she would have been entitled to was %th or $905.55 as she was not bequeathed an extra portion, she would not be entitled to any portion of the $727.80 over plus which Albert received. This amount would ordinarily be divided each to Hilda, Emile, Corinne and Blanchard, however, only Emile and Blanchard have appealed and, therefore, each are entitled to receive from Albert $181.95 which, added to the $500.00 value of the property bequeathed to them would give each of them $681.95. Their share should be $905.55 but Norma received $1800.00 worth of property, or an over plus of $894.45 which, divided by four, would be $223.61 that would have made up the difference and given Emile and Blanchard their full %th or $905.55. However, since the allegation of the petition and the prayer is limited to a reduction of the bequest to Albert Robert, no judgment can be rendered under the pleadings for this amount against Norma.
It is necessary that the judgment of the Lower Court as to Emile and Blanchard Robert be reversed and rendered in accordance with the conclusion reached by this Court. As neither Albert, Corinne, Hilda or Norma Robert have appealed or answered the appeal, no change can be made in the judgment of the Lower Court *538 placing them in possession of the property-bequeathed to them under the terms of the will, subject to a right of way 50 feet in width on Albert Robert’s property and 15 feet in width along the north side of the property of Hilda Robert.
IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Emile D. Robert be and he is hereby sent and put into possession of the following described property, to-wit:
“All that certain parcel of land being situated in Section 38 Township 9 South, Range 14 East, St. Tammany Parish, Louisiana, and being more particularly described as follows, to-wit: From the Section corner common to Sections 38 and 17 of Township 9 South Range 14 East, St. Tammany Parish, Louisiana, go along the East boundary line of Section 38 being North 27 degrees east a distance of 3833 feet to an iron pipe set in center of the present Bayou Liberty Road and the center of a slough and is the Northeast corner or point of beginning as described in a deed from Mrs. Sallie Morgan to Octave Robert and recorded in COB ‘A-3’ folio 108 of the official records of St. Tammany Parish, Louisiana, Said point being the southeast corner of the property presently owned by Carl Madison; thence go along said Carl Madison’s south line and the north line of Octave Robert’s land being North 63 degrees West a distance of 485 feet to the point of beginning; thence go south 27 degrees West 165 feet; thence go south 63 degrees East 175 feet; thence go North 27 degrees east 165 feet; thence go north 63 degrees west 175 feet to the point of beginning.”
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Blanchard J. Robert be and he is hereby sent and put into possession of the following described property, to-wit:
“All that certain parcel of land being situated in Section 38 Township 9 South Range 14 East, St. Tammany Parish, Louisiana, and being more particularly described as follows, to-wit: From the section corner common sections 38 and 17 of Township 9 South, Range 14 East, St. Tammany Parish Louisiana, go along the east boundary line of Section 38 being North 27 degrees East a distance of 3833 feet to an iron pipe set in center of the present Bayou Liberty Road and the center of a slough and is the Northeast corner or point of beginning as described in a deed from Mrs. Sallie Morgan to Octave Robert and recorded in COB ‘A-2’ folio 108 of the official records of St. Tammany Parish, Louisiana. Said point being the Southeast corner of the property presently owned by Carl Madison; thence go along said Carl Madison’s South line and the North boundary line of Octave Robert’s lands being North 63 degrees West a distance of 485 feet to the point of beginning; thence go South 27 degrees West 165 feet; thence go North 63 degrees West 175 feet; thence go North 27 degrees East 165 feet to a steel column; thence go South 63 degrees East 175 feet to the point of beginning.”
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the improvements located on the property bequeathed to Albert Robert be and they are hereby declared to be community property of Octave Robert and Ann Zander Robert of a value of $300.00, and that said property be sold for at least % of its value, Yz of the proceeds of the sale payable to Albert Robert and Yz payable into the estate of Ann Zander Robert, free of all costs with the exception of the pro rata cost of sale.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Blanchard and Emile Robert and against Albert Robert in the full sum of $181.95 to each, being the excess of the disposable portion received by the said Albert Robert, together with legal interest from judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the costs of these proceedings be paid by the defendant, Albert Robert.
Reversed in part and affirmed in part.